UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JO DEE ANN ENRIQUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:17cv12 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since December 12, 2012, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: post-traumatic stress

2

disorder; bipolar II disorder; generalized anxiety/panic disorder; obesity; asthma; minimal degenerative changes of the thoracic and lumbar spines; mild degenerative changes at the left sacroiliac joint; minimal degenerative changes of the cervical spine with no cord changes or nerve root impingement; congenital dysplasia of the hips; and sciatica/pain syndrome (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the physical residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a). Her capacities are limited in that she cannot use her right dominant hand for fine and gross manipulations on a constant basis, but is able to use it for these tasks on a frequent basis. She is able to reach overhead and perform overhead work with her right dominant hand/arm on an occasional but not frequent or constant basis. As to postural changes, she can occasionally balance; stoop; crouch; kneel; crawl and climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. Otherwise, she can lift, carry, push and pull ten pounds frequently and occasionally, stand and/or walk for two hours during an eight-hour workday, and sit for six hours throughout the workday. With respect to her work environment, the claimant must avoid concentrated exposure to excessive amounts of airborne particulate such as dusts, proximity to open and dangerous machinery and open and exposed heights or on vibrating surfaces such as a catwalk that is next to heavy machinery and at jobs that require use of vibrating tools such as drills. The claimant retains the mental residual functional capacity to perform simple, routine, and repetitive tasks, which she can learn with a short demonstration or within up to thirty days. She can maintain a level of concentration that is sufficient to perform simple tasks and can remember simple work-like procedures. As to social interactions, the claimant can interact with co-workers, supervisors, and the public on a superficial basis defined as occasional and casual contact not involving prolonged conversation, but contact with supervisors will involve necessary instruction.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on February 5, 1975 and was 37 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability

> because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 12, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 23- 55).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on September 13, 2017. On December 20, 2017, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on February 28, 2018. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not

disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff protectively filed an application for Supplemental Security Income (SSI) on December 12, 2012 alleging disability beginning November 1, 2012. (Tr. 153 and 316-324) The claim was denied initially and upon reconsideration. (Tr. 185-188 and 192-194) A hearing was held before ALJ MaryAnn Bright and afterwards an unfavorable decision was issued. (Tr. 150-171) After a Request for Review, the Appeals Council remanded the case to the ALJ. (Tr. 172-175) The Appeals Council remanded for the following reasons: hearing decision did not contain an adequate evaluation of the opinion of Dr. H. M. Bacchus, Jr.; the assessed residual functional capacity limits the claimant to occasional full extended reaching with the upper extremity as well as occasional handling and fingering with the upper right extremity; however, the VE's testimony was inconsistent with the RFC; and the evidence of record reveals the claimant has been diagnosed with and treated for diabetes mellitus, but the hearing decision does not obtain an evaluation of whether this constitutes a severe medically determinable impairment. (Tr. 173-174) A new hearing was held before ALJ William Pierson who issued an unfavorable decision. (Tr. 17-66) After a Request for Review was filed, the Appeals Council denied review making the decision of the ALJ the final one of the Commissioner. (Tr. 1-16 and 545-584)

Plaintiff was 37 years old on her alleged onset date having been born on February 5, 1975. (Tr. 316) She had an 8th grade education. (Tr. 366) She had past relevant work as a

certified nurse's aide, a machine lubricator, a building maintenance worker, and a housekeeping cleaner. (Tr. 53)

Plaintiff alleges the following impairments: right shoulder impingement syndrome, obesity, asthma, degenerative changes of the thoracic and lumbar spines, degenerative changes of the left sacroiliac joint, degenerative changes of the cervical spine, congenital dysplasia of the hips, sciatica/pain syndrome, post-traumatic stress disorder, bipolar II disorder, and generalized anxiety/panic disorder.

In September of 2013, Dr. H. M. Bacchus, a doctor who examined Plaintiff at the request of Social Security, found that Plaintiff "does appear to have significant pain and deficits in regard to her right shoulder and right hip today." (Tr. 946) Dr. Bacchus went on to find that she has "limitations in regards to repetitive or heavy pushing, pulling, lifting and reaching (RUE), squatting, prolonged standing and walking, climbing and walking on uneven ground." (*Id*.) On "Review of Systems" Dr. Bacchus noted that Plaintiff was positive for joint pain, weakness and stiffness, low back pain, depression and anxiety. (Tr. 945) On physical exam he noted that she was 66 inches tall and weighed 249 pounds. (*Id*.) On exam of her extremities she had right hip, right shoulder, and right knee scars which were healed. (*Id*.) On back exam she had tenderness to palpitation and reduced range of motion in the lumbosacral spine. (*Id*.) Her forward flexion was 70° with a normal of 90°; her extension was 15° with a normal of 25°; and her lateral flexion was 10º on the right and 15º on the left with a normal of 25°. (Tr. 947) She had right hip pain as well. (Tr. 945) On musculoskeletal exam her gait was antalgic and favored her right hip. (Tr. 946) She was unable to perform heel, toe gait or hop on the right; fair on the left. (*Id*.) She was unable to do the tandem maneuver, and she squatted only one-third of the way down with

6

slow rise. (*Id*.) Her range of motion revealed deficits in the neck, lower back, right shoulder, right arm, knees, hips, and right ankle. (*Id*.) In her neck her flexion was 40° with a normal of 50° ; her extension was 40° with a normal of 60° ; her lateral flexion was 40° on both right and left with a normal of 45° ; and her rotation on the right and left were 50° and 60° respectively with a normal of 80°. (Tr. 947) She had deficits in her right shoulder and range of motion as follows: 30° with a normal of 150° abduction; 10° with 30° normal adduction; 40° with 150° normal forward elevation; 20° internal rotation with a normal 80°; and 30° external rotation with a normal of 90°. (*Id.*) Her range of motion in the knees is abnormal as follows: flexion of 90° on the right and 100° on the left with 150° normal. (*Id.*) Range of motion in the hips was abnormal as follows: on abduction 20° on the right and 30° on the left with a normal of 40° ; adduction of 10° on the right and 15° on the left with a normal of 20°; flexion of 30° on the right and 60° on the left with a normal of 100°; 15° on the right and 30° on the left of internal rotation with a normal of 40°; 20° on the right and 40° on the left in external rotation with a normal of 50° ; and 10° on the right and 20° on the left for extension with a normal of 30°. (*Id.*) With respect to her right ankle she had 15° dorsiflexion and 30° plantar flexion with a normal of 20° and 40° respectively. (*Id.*) The straight leg raising test was 50° on the right and 70° on the left. (Tr. 946) She had pain with palpation in the right shoulder and right hip. (*Id.*) She had right knee tenderness greater on the left. (*Id.*) She also appeared to have some looseness in the right hip joint. (*Id.*) Her gait was slow, and sustainability appears poor to fair on uneven ground. (*Id.*) On neurological exam muscle strength and tone was 3-4/5 RUE and RLE; 5/5 LUE and LLE. (*Id.*) Grip strength was 5/5 on the right and 5/5 on the left. (*Id.*) Fine and gross dexterity was slower, but preserved. (*Id.*) No atrophy was noted. (*Id.*)

In September of 2013, Dr. Joshua Eskonen, a non-examining State agency physician, completed a Physical Residual Functional Capacity Assessment. (Tr. 128-131) He found that Plaintiff was able to perform light exertional work being able to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull unlimited, other than as shown for lift and/or carry. (Tr. 128-129) She had non-exertional limitations including the following: only occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; and never climbing ladders/ropes/scaffolds; occasional reaching in front and/or laterally and overhead with the right arm; only occasional fingering with the right hand; only occasional handling with the right hand; and avoid concentrated exposure to fumes, odors, dust, gasses, poor ventilation, etc. (Tr. 129-131)

In December of 2013, Dr. David Everetts, a non-examining State agency doctor, reviewed all of the evidence in the file and affirmed the assessment of Dr. Eskonen as written. (Tr. 144) Dr. Everetts also explained that he reviewed additional medical evidence and orthopedic office visit from September of 2013 and agreed that Plaintiff's gait was antalgic and gave a prescription for additional opioids. (*Id.*) He also noted that in October 2013 Plaintiff saw her primary care physician for an office visit; however her gait was considered normal and her left extremity sensory exam was normal including vibratory and monofilament testing on the bilateral lower extremity. (*Id.*)

Plaintiff had received treatment through Orthopedics Northeast (ONE) for many years for various orthopedic problems. Dr. Michael Lee performed surgery on her right shoulder in February of 2009. (Tr. 1199-1201) He saw her five more times through February of 2009. (Tr.

1185-1194). Dr. Lee saw her again in March of 2013, April of 2013, and January of 2014. (Tr. 909-910, 920-921, and 1000-1001) She was also seen once by Dr. David Conner for hip problems in March of 2013 and July of 2013. (Tr. 912-914 and 932-933) She also received pain management treatment from Dr. Jeffrey Barr in August of 2012, October of 2012, January of 2013, March of 2013, April of 2013, twice in June of 2013, July of 2013, September of 2013, and November of 2013. (Tr. 894-904, 917-919, 922-929, and 949-954)

In July of 2014 she saw a nurse practitioner regarding her foot pain. (Tr. 1360-1367), and in September of 2014 she saw Dr. R. Hilker about her foot pain. (Tr. 1304-1305)

In October of 2014 she saw Dr. J. Winters at Fort Wayne Orthopedics (FWO) regarding her back pain from the neck on down. (Tr. 1349-1351) At FWO she also saw Dr. Matthew Snyder in October of 2014 regarding her right hip pain, shoulder pain, and knee pain. (Tr. 1354-1355)

She saw Dr. W. Virkus in November of 2014 at Indiana University regarding her right hip. (Tr. 1046-1048)

She was also seen by Dr. Harry Ailinani for pain management in April of 2014, May of 2014, June of 2014, July of 2014, October of 2014, December of 2014, January of 2015, twice in February of 2015, March of 2015, and April of 2015. (Tr. 1053-1057, 1063-1067, 1079-1088, 1092-1101, 1317-1321, and 1326-1345)

During this period Plaintiff saw two family doctors. She saw Dr. Denise Smith once in June of 2013. (Tr. 1173-1174) After that she saw Dr. J. Oakley in October of 2013, December of 2013, February of 2014, April of 2014, three times in May of 2014, June of 2014, September of 2014, October of 2014, and January of 2015. (Tr. 957-960, 1012-1015, 1226-1252, 1270-1274,

9

1281-1284, and 1290-1292)

In September of 2013, Dr. Alan Stage provided a psychological evaluation of Plaintiff at the request of Social Security. (Tr. 939-943) Plaintiff reported that she had been experiencing significant, long standing feelings of depression and anxiety. (Tr. 939) She denied ever having thoughts of self-harm. (*Id*.) She reported a history of inpatient psychiatric treatment stating that she was hospitalized once when she was 12 years old. (*Id*.) She also stated that she last received counseling services three years ago at the Bowen Center; however, when Medicaid stopped providing coverage, the treatment ended. (*Id*.) Plaintiff described her emotional distress as accompanied by racing thoughts, confusion, frequent worry, free-floating anxiety, panic attacks, social anxiety, and tangential thinking. (*Id.*) She reported a history of childhood physical and sexual abuse. (*Id*.) She also reported that she suffered domestic violence for fourteen years, which she stated included incidents in which her children's father "set the house on fire while the kids slept" and "stabbed me with a hammer." (*Id*.) She admitted that she has had multiple abusive relationships but noted that her current relationship is the first she has had that has not been abusive or turbulent. (*Id*.) She also said she had been charged once for domestic violence, but she said that she was defending herself and her children from the children's dad. (*Id*.) She indicated that she was incarcerated for six months as a result. (*Id*.) She said she last abused alcohol eleven or twelve years ago and that she suffered from alcohol poisoning in 2002. (Tr. 939-940) Dr. Stage found that Plaintiff had panic disorder with agoraphobia and major depressive disorder, recurrent, moderate. (Tr. 942) He found that she had a current Global Assessment of Functioning (GAF) of 50. (Tr. 943)

In September of 2013, Dr. Stacia Hill, a non-examining State agency psychologist, found

in September of 2013 that Plaintiff had a mild degree of limitation in daily living activities and maintaining social functioning. (Tr. 197) Dr. Hill also found that Plaintiff had no episodes of decompensation. (*Id.*) Dr. Hill found that Plaintiff had a moderate degree of limitation in maintaining concentration, persistence or pace. (*Id.*) Dr. Hill completed a "Mental Residual Functional Capacity Assessment." (Tr. 131-132) She found that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods of time. (Tr. 131) Dr. Hill found that Plaintiff "can understand, remember, and carry out semi skilled tasks. The claimant can relate on at least a superficial basis and on an ongoing basis with co-workers and supervisors. The claimant can attend to tasks for a sufficient period of time to complete tasks. The claimant can manage the stresses involved with semi-skilled work." (Tr. 132)

In December of 2013, Dr. Donna Unversaw, a non-examining State agency psychologist viewed all of the evidence in the file and affirmed the assessment of Dr. Hill as written. (Tr. 146)

In March of 2014, Plaintiff underwent evaluation by Michele Jones at Park Center having been referred by Dr. Oakley. (Tr. 1147) Ms. Jones noted that Plaintiff had been seen in 1999 and 2007 at Park Center, and for counseling at the Northeastern Center in 2000 following separation from her children's father regarding abuse issues. (*Id.*) Plaintiff saw Dr. Spink, a psychologist, from 2003 to 2005 for coping skills. (*Id.*) In 2007 she was receiving family counseling (home-based from Park Center) and parenting classes (home-based from CAP). (*Id.*) She had prior treatment and diagnoses of anxiety, depression, Bipolar disorder, and ADHD. (*Id.*) She was on ADHD medication and Valium from Dr. Oakley. (*Id.*) She was diagnosed with Post Traumatic Stress Disorder (PTSD) and Bipolar II Disorder. (Tr. 1154) Her current GAF was rated at 49. (Tr.

11

1155) In May of 2014, Karen Lothamer, a psychiatric nurse practitioner, evaluated Plaintiff. (Tr. 1027) Plaintiff told Ms. Lothamer that she could not shut her brain off to relax, was constantly worrying about things, had anxiety attacks constantly, and that her mood swings can get bad. (Tr. 1027) Ms. Lothamer diagnosed Post Traumatic Stress Disorder (PTSD) and Bipolar II Disorder. (Tr. 1029) She rated Plaintiff's current GAF at 49. (*Id.*) Medications were discussed, and Plaintiff decided to try Effexor and then Trileptal for mood. (*Id.*) However, Ms. Lothamer did not prescribe Adderall because of no ADHD diagnosis. (*Id.*) Plaintiff also saw Ms. Jones in May of 2014. (Tr. 1139-1140) Plaintiff did not attend any appointments after May, and the case was terminated in February of 2015. (Tr. 1110-1112)

In November of 2014, Plaintiff saw John Musgrave, a psychologist, for a follow-up on anxiety. (Tr. 1278) Plaintiff told the doctor that Adderall was helpful to her in the past to sleep. (*Id.*) Dr. Musgrave noted that Dr. Oakley was hesitant to keep prescribing her a benzodiazepine given the pain medications that she is on as well. (*Id.*) Dr. Musgrave diagnosed PTSD and personality disorder, NOS (borderline features). (*Id.*) He recommended that she return to Park Center for treatment with Michele Jones for her past trauma. (*Id.*) He also found that her symptoms were not consistent with ADHD. (*Id.*)

In support of remand, Plaintiff first argues that the ALJ improperly failed to incorporate his finding of a moderate degree of limitation in concentration, persistence or pace in his hypothetical. In his special technique the ALJ found that Plaintiff had moderate difficulties in concentration, persistence or pace. (Tr. 30-31). In the hypothetical adopted by the ALJ as his residual functional capacity (RFC) for Plaintiff, the ALJ limited her as follows: "… limited to superficial interaction with co-workers, supervisors, and the public; superficial is defined as

12

occasional and casual contact not involving prolonged conversation; contact with supervisors still involves necessary instruction; the individual is limited to simple, routine, repetitive tasks that can be learned with short demonstration or within thirty (30) days; can maintain concentration required to learn simple tasks; can remember work-like procedures … ." (Tr. 1422-1423).

When an ALJ poses a hypothetical question to a Vocational Expert, the question must include all limitations supported by the medical evidence in the record, which includes deficiencies of concentration, persistence and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003). The Seventh Circuit cases suggest that the most effective way to ensure that the VE is fully aware of the claimant's limitations is to include all of them directly in a hypothetical. *O'Connor-Spinner v. Astrue*, 627 F.3d at 619. In most cases, employing terms like "simple repetitive tasks" or "unskilled work" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace. *Id*. at 620. Plaintiff argues that the ALJ's limitation to "simple, routine, repetitive tasks that can be learned with short demonstration or within (30) days" is deficient. Although there may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in remand, for most cases the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs the claimant can do. *Id.*

The first exception to express inclusion is where the VE's familiarity with the claimant's limitations, despite any gaps in the hypothetical, shows that the VE independently reviewed the

medical record or heard testimony directly addressing these limitations. *Id.* at 619. However, this exception to the general rule does not apply where, as here, the ALJ poses a series of increasingly restrictive hypotheticals to the VE because in such cases it is inferred that the VE's attention is focused on the hypotheticals and not on the record. *Id*. In the instant case the VE was focused on increasingly restrictive hypotheticals. (Tr. 1421-1427).

The second exception is where the ALJ's alternative phrasing specifically excluded those tasks as someone with the claimant's limitation would be unable to perform. *Id*. The Seventh Circuit has accepted this most often where a claimant's limitations were stress- or panic-related in a hypothetical restricting the claimant to low-stress work. *Id*. But in the instant case the ALJ did not use the term "low-stress work" nor are the stated limitations primarily stress- or panic-related.

Third, the Seventh Circuit has allowed hypotheticals to have presented closer questions, but in that type of case where the limitations on concentration, persistence, and pace were not mentioned in a hypothetical, the underlying conditions were mentioned. *Id*. at 619-20. In the instant case the ALJ did mention the underlying conditions. (Tr. 1422-1427). None of the other limitations used by the ALJ in his hypothetical constitute a moderate degree of limitation in concentration, persistence or pace.

The limitation "to superficial interaction with co-workers, supervisors, and the public; superficial is defined as occasional and casual contact not involving prolonged conversation; contact with supervisors still involves necessary instruction" is a limitation in social functioning and not in concentration, persistence or pace. *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015). That an individual "can maintain concentration required to learn simple tasks" is not a limitation but a capability that an individual "can remember work-like procedures". Furthermore, neither

limits an individual's ability to sustain work.

In response to Plaintiff's arguments, the Commissioner first argues that two of the non-exertional mental impairments in the ALJ's hypothetical meet the *O'Connor-Spinner* test. The Commissioner states these two "limitations" as follows: (1) "The claimant retains the mental residual functional capacity to perform simple, routine, and repetitive tasks, which she can learn with a short demonstration or within up to thirty days." and (2) "She can maintain a level of concentration that is sufficient to perform simple tasks and can remember simple work-like procedures."

However, as Plaintiff notes, limitations to do "simple, routine, and repetitive tasks" has been repeatedly rejected by the Seventh Circuit. *Varga v. Colvin*, 694 F.3d 809, 815 (7th Cir. 2015) ("Simple, routine, and repetitive tasks"); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("Simple repetitive tasks"); *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) ("Simple routine tasks"). The addition of the phrase "can be learned with a short demonstration or within up to 30 days" does not remedy the problem, as this phrase is simply the definition of "unskilled work". *See* 20 CFR 416.1968(a). A limitation to "unskilled work" has been rejected as insufficient by the Seventh Circuit. *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008). The second phrase identified by the Commissioner has also been rejected by the Seventh Circuit. *O'Connor-Spinner*, No. 17-1954, 2018 WL 914954 at (February 16, 2018) ("An individual can understand, remember and carrying out simple work instructions"). Furthermore, this phrase is not a limitation in terms of unskilled work as this is a work-related mental ability that an individual capable of unskilled work would be able to perform. Thus, the ALJ's hypothetical was improper.

Next, the Commissioner asserts that Plaintiff does not identify additional limitations that should be included in the hypothetical question which makes the argument "harmless error" But the Commissioner misunderstands what is required by *O'Connor-Spinner*. The basis of *O'Connor-Spinner* is that the ALJ failed to include limitations in his hypothetical in regard to a moderate limitation in concentration, persistence or pace. *O'Connor-Spinner*, 629 F.3d at 618-19. As the ALJ has not met any of the exceptions under *O'Connor-Spinner*, he did not adequately consider all of the limitations she found in the hypothetical which is error. *Lanigan v. Berryhill*, 865 F.3d 558, 566 (7th Cir. 2017). Thus, remand is necessary.

Next, Plaintiff argues that the ALJ improperly discounted the opinions of Drs. Bacchus, Eskonen, and Everetts regarding reaching, handling, and fingering. Dr. Bacchus, who is a consultative examiner, found in September of 2013 that Plaintiff had significant limitations on repetitive reaching. (Tr. 946) Dr. Joshua Eskonen, a nonexamining State agency physician, found in his assessment of September of 2013 the same limitation which was affirmed by Dr. David Everetts, another non-examining State agency physician, in December of 2013. (Tr. 130 and 143-144)

Charles McBee, a vocational expert (VE), testified at the hearing that either a limitation to "occasional reaching" or "occasional handling and fingering" along with the other limitations in the hypothetical which the ALJ eventually adopted as the Residual Functional Capacity would prevent performance of any work. (Tr. 31-32 and 420-426)

The factors in 20 CFR Section 416.927(f) provide the rules for considering medical and other opinions of the treating sources, examining sources, and non-examining sources. These factors include examining relationship, treatment relationship, supportability, consistency,

specialization, and other factors.

The ALJ found that claimant was limited to frequent handling and fingering. (Tr. 37) He gave the following two reasons: (1) the opinion of Dr. Sands in January of 2012 limited claimant to frequent handling and fingering, and (2) the opinions of Drs. Bacchus, Eskonen and Everetts were not supported by diagnostic testing, physical exam findings, and prescribed treatment. (*Id*.)

Plaintiff argues that the opinion of Dr. Sands refers to the left non-dominant upper extremity and not the right dominant upper extremity as found by the other doctors. (Tr. 129-130, 142-144, and 724) As the ALJ conceded, Dr. Sands was mistaken. (Tr. 37) The ALJ argues that this was merely inadvertent as in his references to the medical evidence he cited the right arm, shoulder, and hand. (Tr. 37 and 723).

Dr. Bacchus did the first consultative exam upon which the report of Dr. Sands is based, and he also did the second consultative exam upon which the opinions of Drs. Eskonen and Everetts were based. (Tr. 717-719 and 944-947) There are more significant deficits in the objective medical findings on the second exam of Dr. Bacchus as opposed to his previous consultative exam findings (*Id*.). Specifically, abduction went from 50° to 30° which is 20% of normal. (Tr. 719 and 947) The adduction was the same. (*Id*.). Forward elevation went down from 70° to 40°. (*Id*.) The internal rotation went from 40° to 20° which is one-quarter of normal. (*Id*.) External rotation went down from 50° to 30° which is one-third of normal. (*Id*.) Plaintiff also had a small reduction in range of motion in the elbow with none present in the previous exam. (*Id*.) There was also a small reduction in neurological findings. In the most recent exam, the muscle strength and tone in her upper extremity was 3-4/5 but was normal in the previous exam. (Tr. 718 and 946) The grip strength was 3/5 on the right which represents no change. (*Id*.) Fine and gross

17

dexterity was slower but preserved which was not present on the first exam. (*Id*.) The ALJ did not discuss these findings. (Tr. 37)

The Commissioner, in response, asserts that Plaintiff is asking the court to reweigh the evidence in regard to the opinions of Dr. Sands. The Commissioner is incorrect, because the Plaintiff has argued legal error in that the ALJ "played doctor". ALJ's are not qualified to evaluate medical records themselves, but must rely on expert opinions. *Moreno v. Berryhill*, No. 17-1954, 2018 WL 914954 at *5 (7th Cir. February 16, 2018); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (Remanding because the ALJ improperly "played doctor"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (Prohibiting the ALJ's from "playing doctor" by summarizing the result of a medical exam without input from an expert). As Plaintiff notes, the findings in the clinical exam by Dr. Bacchus were different and more serious than the findings that Dr. Bacchus made in a previous claim upon which Dr. Sands relied upon at least in part. Although there were other clinical findings, no doctors other than Dr. Eskonen and Dr. Everetts reviewed the findings and gave an opinion. Thus, the ALJ's reasoning is not supported by substantial evidence and remand is warranted.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: April 13, 2018.

                                              s/ William C. Lee
                                              William C. Lee, Judge
                                              United States District Court